FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSOVILLE DIVISION

2022 SEP 19  PM 2: 18

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

| | |
|---|---|
| ANAYANSI VAN DER BERG | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BECKMAN COULTER | ) |
| | ) |
| Defendants. | ) |
| | ) |

Case No. 3:22-cv-1017-BJD-LLL

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

---

*"...It shall be an unlawful employment practice for an employer — to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin..."[1]*

For her VERIFIED COMPLAINT against Defendant, BECKMAN COULTER

("Beckman" or "Defendant"), Plaintiff, ANAYANSI VAN DER BERG ("Plaintiff"),

allege and aver as follows:

1.      This is an action brought to remedy Beckman Coulter's unlawful

Discrimination and retaliation intentional actions against plaintiff who requested two (2) religious

exemptions in 2021 and multiple accommodations from Beckman Coulter's COVID-19 vaccine and

mask mandate policy.

2.      **Unless this Court intervenes and grants the Plaintiff compensatory and punitive**

**damages, the Defendant will continue other similarly situated employees from**

**their positions, causing incalculable and irreparable harm to them and their families as**

**described herein, including homelessness, lack of medical care, lack of food**

---

[1] Florida Civil Human Rights Act of 1992 (emphasis added).

**and shelter, disrupted education for their children, financial ruin, and harms to their physical, mental and emotional health.**

"If employees learn that a co-worker has suffered an adverse employment action for stepping forward to challenge what they understand may be discrimination in the workplace, others may not want to take that kind of a risk"[2] – Robert Camino, EEOC attorney.

3.       Plaintiff is in the Clinical Research field, who has sincerely held religious beliefs against the COVID-19 vaccines because they were either developed from, or tested with, aborted fetal cells lines, or for other religious reasons that were explained to Beckman. Because of Beckman's unlawful actions in denying both meritorious exemption requests, Plaintiff was faced with an immediate "choice" to either (a) receive a COVID-19 vaccination in direct violation of their conscience and sincerely held religious beliefs, or (b) be terminated from their employment with Beckman, by December 8, 2021, as a consequence of exercising her fundamental and statutory right to refuse administration of the COVID-19 vaccines. "Such a Hobson's choice is actually no choice at all." *Smith v. Grams*, 565 F.3d 1037, 1046 (7th Cir. 2009) (emphasis added).

4.       Initially, Beckman Coulter denied the first (1) (See Exhibit 1) exemption request it received, regardless of merit and without discussing with the Plaintiff reasonable accommodations. More recently, after being confronted with the illegality of its conduct, Plaintiff submitted an appeal letter requesting for reasonable accommodation. (See Exhibit 2)

The appeal letter was ignored and Beckman switched tactics from denying the Plaintiff's religious exemption requests to requesting a new submission for religious exemption under a new non-negotiable company policy where if employee is not fully vaccinated or received qualified accommodation by December 8th, it will suffer consequences including termination without paid.

*"…Associates who are not fully vaccinated or have not received an approved accommodation by December 8th will be placed on unpaid leave for a period up to 30 days, during which time, they may*

---

[2] EEOC Sues Dental Health Products for Retaliation, 9/2022

*choose to be fully vaccinated or seek an accommodation. As of January 9, failure by any associate to*

*be fully vaccinated or to have receive an approved accommodation will result in separation of*

*employment and will be treated as a voluntary resignation.* " (Emphasis added). (See Exhibit 4)

5.      Plaintiff, who exemption request was previously denied, was given until December 8,

2021 to make the decision whether to comply with Beckman's unconscionable Mandatory COVID-19

Vaccination Policy. In addition, even though Beckman has imposed a December 8, 2021, deadline for

its employees to be fully vaccinated, it has already denied the Plaintiff request for religious

accommodations and never responded to the second (2) (See Exhibit 5) request for accommodations.

6.      Plaintiff, as of January 4, 2022, reported the discrimination with the U.S. Equal

Employment Opportunity Commission (EEOC) "Charge of Discrimination" against Beckman as

Plaintiff not only felt discriminated against objections to the company's Mandatory COVID-19

Vaccination Policy but plaintiff also felt retaliated due to name-callings from Robert Magari, Plaintiff's

manager and HR Director, Andrew Baker, regular emails from the company requesting COVID

Vaccination status to be entered into the company's HR portal and upper management and direct

reports refusing to collaborate and engaged in the work environment, which confirms the intention of

the company to terminate the Plaintiff from her current role.

7.      Plaintiff was separated from her employment with the Defendant on June 21, 2022, while

the EEOC investigation "Charge of Discrimination" was still ongoing.

8.      Plaintiff depend heavily on her employment with Beckman to support herself and her

family. The Plaintiff was the sole provider for her family and loss of employment has been

devasting. As attested to further below, but are not limited to, loss of medical insurance and the ability to

provide urgent medical care for Plaintiff's current disability, and inability to pay for her family's

responsibilities. Plaintiff was also subjected to intimidation, setup to fail[3] in her role as a manager due to

---

[3] Setting up to fail (wiki) – a no-win situation designated in such a way that the person in the situation cannot succeed at the task they have been assigned. It is considered a form of workplace bullying.

the actions of her functional manager, Robert Magari, excluding her from decision making and from fully performing her role and threats as a result of her religious declination of vaccination, which caused anxiety and stress for Plaintiff.

9.      Plaintiff refusal to comply with company's policy was faced with adverse employment action from Beckman including bad performance review, decrease in bonus and pay increase as part of the company retaliation actions for the current 'discrimination charge' with EEOC.

10.     Plaintiff has earnestly, honestly, and in good faith sought religious exemptions in two (2) occasions and multiple reasonable accommodations from Beckman's Mandatory COVID-19 Vaccination Policy but was rejected at every turn.

11.     Plaintiff has complied with all requirements for seeking an accommodation and exemption based upon her sincerely held religious beliefs, and otherwise complied with all of the requirements Beckman established for seeking a religious exemption from the Mandatory COVID-19 Vaccination Policy. Indeed, Plaintiff have scratched and clawed to obtain the relief she sought without judicial intervention. Those efforts failed and Plaintiff has lost her job at Beckman and without income since June 21st, 2022[4].

12.     Plaintiff merely sought to protect her sincerely held religious beliefs not to receive a medical product created with or tested upon aborted fetal cell lines while being afforded the opportunity to continue her employment.

13.     Several courts throughout the nation have already issued injunctive relief, including temporary restraining orders, to plaintiffs who are threatened with adverse employment consequences because of their religious or conscience-based objections to COVID-19 vaccines: *Velvet Darnell et. al. v. Quincy Physicians and Surgeons Clinic, S.C. and Blessing Corporate Services, Inc.*, Case No. 2021 MR 193 (18th Judicial Cir. Adams County, IL October

---

[4] Written reason ("termination notice") for termination was never provided by Beckman Coulter.

1, 2021) (granting TRO under Illinois Health Care Right of Conscience Act, and enjoining healthcare provider from taking adverse action against healthcare employees declining COVID-19 vaccinations on religious and conscience grounds); *David Sambrano et. al. v. United Airlines, Inc.*, Case No. 4:21-01074-P (N.D. Texas. Oct. 18, 2021); *Dr. A. v. Hochul*, No. 1:21-CV-1009-DNH-ML, 2021 WL 4734404, *9 (N.D.N.Y. Sept. 14, 2021) (granting preliminary injunction against enforcement of New York's COVID-19 vaccine mandate on healthcare workers for failure to grant religious exemptions and noting that **"Title VII does not demand mere neutrality with regard to religious practices . . . rather, it gives them favored treatment.' Thus, under certain circumstances, Title VII 'requires otherwise-neutral policies to give way to the need for an accommodation."** (emphasis added); *We The Patriots USA, Inc. v. v. Hochul*, No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021) (issuing an injunction pending appeal against enforcement of New York's COVID-19 Vaccine Mandate for its failure to allow for religious accommodations); *Dahl v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021) (allowing the preliminary injunction to stand against University's failure to accommodate student athletes with sincerely held religious objections to the COVID-19 vaccine mandate and noting that "The University **put plaintiffs to the choice: get vaccinated or stop fully participating in intercollegiate sports. . . . By conditioning the privilege of playing sports on plaintiffs' willingness to abandon their sincere religious beliefs, the University burdened their free exercise rights.**" (emphasis added)); *Bilyeu v. UT-Battelle, LLC*, No. 3:21-cv-352, 2021 WL 4859932, * (E.D.Tenn. Oct. 15, 2021) (granting TRO enjoining healthcare employer "from terminating or placing on indefinite unpaid leave any employee who has received a religious or medical accommodation").

14.     Florida Civil Human Rights Act of 1992, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Emergency Use Authorization statute in the United States Code, protect the right of individuals to refuse administration of an unwanted medical product when

acceptance of such product would violate their sincerely held religious beliefs and the exercise of the same. Beckman's Mandatory COVID-19 Vaccination Policy, including its refusal to grant meritorious religious exemption requests, ignores these fundamental protections for Plaintiff's sincerely held religious beliefs, and this Court should enjoin the policy immediately, to protect Plaintiff from imminent irreparable harm.

## **PARTIES**

15.    Plaintiff,  A n a y a n s i  V a n  D e r  B e r g ,  was a Senior Manager of Data Management at Beckman Coulter, working from home ("remotely") from April 2020 to June 2022, who submitted a signed, written request for a religious exemption and accommodation from Beckman's Mandatory COVID-19 Vaccination and Mask Policy, but Beckman refused to provide a reasonable accommodation.

Van Der Berg is a major contributor to her family's income making up 100% of the total income. Van Der Berg has a sick mother that depends on her income.  In addition, Van Der Berg has medical expenses associated with her cancer treatment and a recent foot injury.

Van Der Berg was harassed by her manager, Robert Magari, on multiple occasions for not following the company's policy and later multiple bad reviewed comments added to her yearly performance review for refusing to follow company's policy with comment like 'as a manager, you need to promote and inform other associates of these policies…", even while waiting for a response to her appeal.

On one occasion, Van Der Berg was asked to travel to the office located in Miami, to help with the cleanup effort, informed her Robert Magari, manager, that her religious exemption appeal was pending and the manager replied **"I am not involved; HR has already denied your request. What would anyone think or feel if you go to the office and do not wear a mask."**

Her mental health has been negatively impacted by the persistent harassment at work in most of 2021,

and non-collaborative, negative work environment in 2022 and by the intimidation and threats of

losing her job because of her religious beliefs, which termination eventually took place on June 21st,

2022.

The loss of Van Der Berg's employment has been devastated to her and her family – not only

financially, but medically, emotionally and physically.

16.     Plaintiff's initial religious exemption application was denied on the

basis of "not attending a 5 pm meeting scheduled by an HR representative". (See Exhibit 1)

Plaintiff believe company had no intention of approving a religious exemption because of her stand

around company's policy. The Plaintiff was the only employee during department meetings or

company-wide meetings questioning and sharing information from the CDC/FDA and on several

occasions and in front of a large group of people she was called "*conspiracy theory*" (emphasis added)

or "that's your opinion"[5] or "we are following CDC mandates not state laws or emergency orders".

Plaintiff appealed those decisions with additional evidence only to be denied any reasonable

accommodation for her sincerely held religious beliefs.

17.     Plaintiff filed a claim with the Equal Employment Opportunity Commission (See

Exhibit 6), accompanied by a request for immediate right to sue letter. (See Exhibit 7)

18.     Defendant, B e c k m a n   C o u l t e r,  is a for-profit corporation and

subsidiary of Danaher Corporation - incorporated under the laws of the State of Florida since 2003

with its principal place of business at 11800 SW 147th Avenue, Miami, FL 33196.

Beckman develops, manufactures, and markets products that simplify, automate and innovate complex

biomedical testing.  It is currently headquartered in Brea, California with an additional office in the

State of Florida at 740 W 83rd St in Hialeah, Florida 33014 and employs over 12,000 employees.

Andrew Baker, HR Director Miami office. Andrew rejected the appeal letter

---

[5] Comment made by Andrew Baker, HR Director, Miami office during a phone conversation about Plaintiff's appeal letter.

for the Plaintiff's religious exemption accommodation and provided a new form for accommodation.

Andrew also rejected the Plaintiff's suggestions for accommodation.

Zoe Alba, HR Representative, Miami office. Zoe handled the initial request

for religious accommodation, denied both medical and religious exemption, refused to address Robert

Magari's behavior towards Plaintiff (i.e., non-collaborative environment, name-calling, misinformation

listed on Plaintiff's bad performance review of 2021, unprofessional behavior)

Robert Magari, Plaintiff's Manager, Miami office. Robert started to show

favoritism towards another associate to replace the Plaintiff's role as manager. Robert started to

retaliate towards the Plaintiff, excluding the Plaintiff from decision making, reduce or low bonus and

salary increase, lying about Plaintiff's performance for the year 2021, ignored, laughed, and ridiculed

Plaintiff's suggestions related to projects the Plaintiff was involved in.

Robin Newman, VP of Clinical Affairs, Chaska office. Robin ignored many

requests from the Plaintiff to address Robert Magari's behavior and actions. Robin was also the person

delivering the news to the Plaintiff that she has been terminated from the company as of June 21, 2022.

## JURISDICTION AND VENUE

19.     This action arises under the laws of the United States, specifically 21 U.S.C.

§360bbb-3 and 42 U.S.C. § 2000e, *et seq*. This action also arises under the laws of the State of

Florida.

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343,

and 1367.

21.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

Plaintiff has been at all times relevant herein a resident of the City of Live Oak, Suwannee County,

State of Florida.

22.     This Court is authorized to grant declaratory judgment under the Declaratory

Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

23.     This Court is authorized to grant Plaintiff's prayer for relief regarding damages pursuant to Rule 54 of the Federal Rules of Civil Procedure and the supplementary laws of the State of Florida Public Health Title XXIX.

24.     This Court is authorized to grant Plaintiff's prayer for relief regarding damages, including treble damages.

25.     This Court is authorized to grant Plaintiff's prayer for relief regarding costs and expenses, including reasonable fees (cut in pay or bonus, loss of income - back and front pay), pursuant to the Florida Civil Human Rights Act of 1992 760.11(5).

## EXHAUSTION OF ADMINISTRATIVE REQUIREMENT

26.  Plaintiff has fulfilled all administrative prerequisites necessary to maintain this action.

27.  On January 5, 2022, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") charging Beckman with discrimination against her on the basis of religious exemption Title VII. A true and accurate copy of Ms. Van Der Berg EEOC complaint is attached hereto as Exhibit 6.

28. On August 26, 2022, Plaintiff Van Der Berg received notification of right to sue from the EEOC. A true and accurate copy of Ms. Van Der Berg right to sue notice is attached hereto as Exhibit 7.

## GENERAL ALLEGATIONS

### A.     BECKMAN DENIED PLANTIFF'S REQUEST FOR MEDICAL EXEMPTION PRIOR OF RECEIVING MEDICAL FORMS IN VIOLATION OF THE AMERICAN WITH DISABILITIES ACT (ADA)

29.     On September 13, 2021, Beckman sent an email to the Plaintiff that her medical accommodation has been denied even though the Plaintiff did not submit any medical

records.

30.     Plaintiff was not given the opportunity to present her medical records for accommodations since Plaintiff only submitted her religious exemption request on August 23, 2021, which was also denied on September 13, 2021. (See Exhibit 1)

31.     The Americans with Disabilities Act (ADA), enacted by Congress in 1990, protects individuals with disabilities from discrimination in access to employment. Beckman denied medical exemption to the Plaintiff without proper documentation or interactive process. "Employers, no matter how large, have an obligation under the law to evaluate the individual circumstances of employees with disabilities when considering requests for reasonable accommodations." (EEOC v. Walmart Stores East LP, 17-cv-70, 2021).

The denial was executed via email. (See Exhibit 1)

32.     On April 2022, Plaintiff was on medical leave for a foot injury while under a lot of stress from her job. When Plaintiff was ready to return to work in May 2022, ReedGroup, the third-party handling her disability, informed the Plaintiff that her manager, Robert Magari, did not accept the restrictions listed in the provided medical forms and that Beckman wanted the Plaintiff to return back to short-term disability until: (1) the Plaintiff can return to the office without restrictions, (2) the Plaintiff's doctor has signed a new released form without the restrictions. The actions taking by Beckman violates Americans with Disabilities Act of 1990 requirements for accommodation, as codified, 42 U.S.C. §§ 12112 to 12117 (See Exhibit 3)

**B.    BECKMAN'S MANDATORY AND DISCRIMINATORY COVID-19 VACCINATION POLICY.**

33.     On October 22, 2021, Beckman announced a policy mandating COVID-19

vaccines for all of its 10,000 employees, and contractors.

34.    Beckman's Mandatory COVID-19 Vaccination Policy specifically states that the "requirement applies to all Beckman US ad Puerto Rico team members…"

35.    The Mandatory COVID-19 Vaccination Policy further provides that the final deadline to be "fully vaccinated" is December 8, 2021.

36.    In its Mandatory COVID-19 Vaccination Policy, Beckman purported to permit employees to obtain religious exemptions from the mandate, but as explained further below, that process was a sham, because Beckman never intended to grant exemptions or accommodations for all or virtually all of its employees who request them.

37.    Beckman's Mandatory COVID-19 Vaccination Policy also contrasts with and flouts Governor Desanti's law, which require healthcare workers to be vaccinated or reasonable accommodation be provided.

"…No one should have to pick between a jab or a job…shouldn't have to choose between a job that you need and a shot that you may not want…that's an individual's decision and we're not going to stand for that…" (FL. Governor, Desantis, Media 2022).[6]

38.    The Mandatory COVID-19 Vaccination Policy also differs substantially from the European Union's digital COVID-19 certificate, which considers the following as equivalent: (1) a COVID-19 vaccine; (2) a negative COVID-19 test; or (3) having previously recovered from COVID-19.

See EU    Digital    COVID    Certificate, EUROPEAN    COMMISSION, https://ec.europa.eu/info/live-work-travel-eu/coronavirus-response/safe-covid-19-vaccines-europeans/eu-digital-covid-certificate_en.

39.    Indeed, many healthcare systems around the country, including many in

---

[6] https://www.redvoicemedia.com/video/2022/09/gov-desantis-no-one-should-have-to-pick-between-a-jab-or-a-job/

Florida have shown that the important policies of accommodating sincerely held religious beliefs and protecting health and safety of patients and fellow healthcare workers can coexist.

40.    There is nothing different or unique about Beckman that requires Beckman to flout the recommendations and requirements of the Governor and the Florida Department of Public Health, and to refuse to accommodate its religiously-exempt employees while all of its peers are able and willing to accommodate their similarly situated employees.

41.    Beckman's refusal to exempt and accommodate the Plaintiff's sincerely held religious convictions is the product of Beckman's animus towards, and discrimination against, the Plaintiff because of her religious beliefs.

### B.    BECKMAN'S SHAM RELIGIOUS EXEMPTION PROCESS, AND ITS DISCRIMINATORY APPLICATION OF ITS MANDATORY COVID-19 VACCINATION POLICY.

42.    As mentioned above, Beckman's Mandatory COVID-19 Vaccination Policy provided employees, in theory but not in practice, the illusory ability to obtain a religious exemption from the vaccine mandate.

43.    Those seeking religious exemptions were required to submit a "Request For Religious Exemption" form before the deadline December 8, 2021. Attached hereto as Exhibit 8 is a sample copy of Beckman's "Request for Religious Exemption" form. The form specified that an employee need only provide "a description of my sincerely held religious principle or practice that guides my objection to receiving the required vaccination."

44.    In submitting her requests for religious exemptions, the Plaintiff followed the directions given to her by Beckman and complied fully with Beckman's

purported requirements.

45.    However, Beckman re-reviewed the requests and by November 17, 2021, an hour meeting was scheduled that included a set of questionnaires as to imply that Beckman was not convinced of the Plaintiff's sincerely held religious beliefs.

46.    Even though Beckman's employee went far above and beyond what Beckman itself requested and submitted detailed letters explaining the basis of their sincerely held religious beliefs against the vaccine, Beckman ultimately denied and/or delayed processing exemptions for no reason at all, or for supposed "failure to attend a scheduled meeting," without reviewing any such "evidence" – either in advance or at the time of the denials.

47.    Beckman then only gave Plaintiff a new religious exemption form (3 days deadline) with extensive questionnaire ignoring the appeal letter submitted by the Plaintiff – "the appeal does not apply any longer. "You will need to submit a new request with our new form".[7]

48.    The exemption requests submitted by Plaintiff clearly met Beckman's unpublished, purported "criteria," yet were still denied,.


For example:

a.   Employee provided "evidence" of their religious beliefs, including references to multiple Bible verses which they understand as commands from God to abstain from the vaccine.

b.   Employee provided the name and telephone number of their religious leader, as improperly requested by Beckman. The employee also provided letters of support from her clergy and church, further discussing and validating her sincere religious beliefs, even though Beckman did not, and could not legally, require such letter.

b.   Employee also provided ample "evidence" of the indisputable connection between the COVID-19 vaccines and aborted fetal cells, including by reference to multiple

---

[7] Comment from Andrew Baker, HR Director of Miami office.

government websites that establish and document this connection.

49.     And yet, Beckman denied Plaintiff's exemption request in September 2021 and never processed the second (2nd) request. (See Exhibit 6)

50.     It is clear from Beckman's denials, that Beckman never intended to grant any of these exemption requests to begin with, and that its entire exemption process was a sham.

51.     Moreover, even though Beckman has imposed a December 8, 2021 deadline for its employees to be fully vaccinated, it has already sent letters before that deadline to employees advising them to take the COVID-19 vaccines as a way of coercing and intimidating those non-vaccinated or lose their jobs. Beckman did this even for employees who had filed appeals of their exemption denials, before Beckman gave them a decision on those appeals.

52.     As a result, Beckman failed to engage with the Plaintiff, in good faith in the interactive process contemplated by Title VII. Beckman did not claim that it would be an "undue hardship on the operation of its business" to allow the Plaintiff to remain with the company in her current role (senior manager, home-based-remotely since April 2020) and continue to demand the Plaintiff to be ready to return to the office denying the possibility for the Plaintiff to be considered "fully remote work" as Beckman perceives the Plaintiff's title "senior manager" as one that should be office-based without restrictions or accommodations, even though, there are several executive's and upper management allowed to work from home full-time.

53.     However, even when Beckman requested a new form and request to be submitted by the Plaintiff, its previous rejection of its employee's religious exemption requests is legally indefensible. Plaintiff "remains in her home-office (North Florida home)," and therefore, even though the exemptions have not been

Case: Document #: 1 Filed: 09/19/22 Page 15 of 35 PageID #: 15

"approved," Beckman will only consider "an offer of office work".

54.    Beckman has therefore made it clear that it is unwilling to reasonably accommodate the religious beliefs of its employee, to allow her to continue her passion for clinical research. This is the same result that Beckman set out to accomplish from the very beginning, when it denied its employee's exemption in September 2021 and accommodation requests for supposed failure to meet Beckman's HR representative conflicting scheduled meeting. (Exhibit 1).

### C.    PLAINTIFFS AND THEIR SINCERELY HELD RELIGIOUS BELIEFS.

55.    Plaintiff has sincerely held religious beliefs that preclude her from complying with the Mandatory COVID-19 Vaccination Policy because of the connection between all three COVID-19 vaccines (in their origination, production, development, or testing), and the cell lines of aborted fetuses.

56.    A fundamental component of Plaintiff's sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

57.    Plaintiff's sincerely held religious beliefs is rooted in Scripture's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

58.    Because of that sincerely held religious belief, Plaintiff believes that she must conform her live, including her decisions relating to medical care, to the commands and teaching of Scripture.

59.    Plaintiff has sincerely held religious beliefs that God forms children in

the womb and knows them prior to their birth, and that because of this, life is sacred from the moment of conception. See Psalm 139:13-14 ("For you formed my inward parts; you knitted me together in my mother's womb. Ipraise you, for Iam fearfully and wonderfully made." (ESV)); Psalm 139:16

("Your eyes saw my unformed substance; in your book were written, every one of them, the day that were formed for me, when as yet there was none of them." (ESV)); *Isaiah* 44:2 ("the Lord that made thee, and formed thee from the womb . . ." (KJV)); *Isaiah* 44:24 ("Thus saith the Lord, thy redeemer, and he that formed thee from the womb, I am the Lord that maketh all things." (KJV)); *Isaiah* 49:1 ("The Lord hath called my from the womb; from the bowels of my mother hath he made mention of my name." (KJV)); *Isaiah* 49:5 ("the Lord that formed me from the womb to be his servant" (KJV)); *Jeremiah* 1:5 ("Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee." (KJV)).

60.     Plaintiffs also have sincerely held religious beliefs that every child's life is sacred because they are made in the image of God. See Genesis 1:26-27 ("Let us make man in our image, after our likeness . . . So God created man in his own image; in the image of God created he him; male and female created he them." (KJV)).

61.     Plaintiffs also have sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. *See, e.g.*, *Exodus* 20:13 ("Though shalt not kill." (KJV)); *Exodus* 21:22-23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 ("the innocent and righteous slay thou not, for I will not justify the wicked." (KJV)); *Genesis* 9:6 ("Whoso sheddeth a man's blood, by man shall his blood by shed: for in the image of God made he man." (KJV)); *Deuteronomy* 27:25 ("Cursed be he that taketh reward to slay an innocent person." (KJV)); *Proverbs* 6:16-17 ("These six things doth the Lord hate: yea, seven are an abomination to him . . . hands that shed innocent blood." (KJV)).

62.     Plaintiff has sincerely held religious beliefs, rooted in the Scriptures listed above, that anything that condones, supports, justifies, or benefits from the taking of innocent human life via abortion is sinful, contrary to the Scriptures, and must be denounced, condemned, and avoided altogether.

63.     Plaintiff has sincerely held religious beliefs, rooted in the Scriptures listed above, that it is an affront to Scripture's teaching that all life is sacred for Plaintiffs to use a product derived from or connected in any way with abortion.

64.     Plaintiff's sincerely held religious beliefs, rooted in the above Scriptures, preclude them from accepting any one of the three currently available COVID-19 vaccines, because all three vaccines were derived from, produced, manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

65.     Plaintiff has sincerely held religious objections to the Johnson & Johnson (Janssen Pharmaceuticals) vaccine because it unquestionably used aborted fetal cells lines to produce and manufacture the vaccines.

66.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**." See North Dakota Health, COVID-19 Vaccines      &      Fetal Cell Lines (Apr. 20, 2021),** available   at https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/ COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last   visited   Aug. 2, 2021) (bold

emphasis original).

67.     The Louisiana Department of Health likewise confirms that the Johnson & Johnson

COVID-19 vaccine, which used PER.C6 fetal cell line, "is a retinal cell line that was **isolated from**

**a terminated fetus in 1985**." Louisiana Department of Public Health, *You Have Questions, We*

*Have     Answers:     COVID-19     Vaccine     FAQ*     (Dec.     12,     2020),     *available     at*

https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-

19_Vaccine_FAQ.pdf (last visited Aug. 2, 2021) (emphasis added).

68.     Scientists at the American Association for the Advancement of Science have

likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell

lines in the development and production phases of the vaccine. *Meredith Wadman*, *Vaccines that*

*use     human     fetal     cells     draw     fire*,     Science     (June     12,     2020),     *available     at*

https://science.sciencemag.org/content/368/6496/1170.full (last visited Aug. 2, 2021).

69.     Plaintiffs also have sincerely held religious objections to the Moderna and

Pfizer/BioNTech COVID-19 vaccines because both of these vaccines, too, have their origins in

research on aborted fetal cells lines.

70.     As reported by the North Dakota Department of Health, in its handout literature for

those considering one of the COVID-19 vaccines, the Moderna and Pfizer mRNA vaccines are

ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the

development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to**

**demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein)**

**or to characterize the SARS-CoV-2 spike protein**." *See* North Dakota Health, *COVID-19*

*Vaccines     &     Fetal     Cell     Lines*     (Apr.     20,     2021),     *available     at*

https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-

19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (emphasis added).

71.     The Louisiana Department of Health's publications again confirm that aborted fetal

cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Aug. 2, 2021).

72.     Therefore, Beckman's pretext for excluding religious beliefs premised on the demonstrable and undeniable association between all three COVID-19 vaccines and aborted fetal cell lines was patently false, and the exclusion of those beliefs was unlawful and discriminatory.

73.     Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, Plaintiff's sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

74.     In addition, Plaintiff has sincerely held religious beliefs that their body is the temple of the Holy Spirit, and to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the Temple of the Holy Spirit. (*See 1 Corinthians* 6:15-20 ("Know ye not that your bodies are the members of Christ? shall I then take the members of Christ and make them members of an harlot? God forbid. . . . What? Know ye not that your body is the temple of the Holy Ghost which is in you, which have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's." (KJV)).

75.     While there may be some faith leaders and other adherents whose understanding of Scripture is different, and who may be willing to accept one of the three currently available COVID-19 vaccines despite their connection with aborted fetal cell lines, Plaintiff's sincerely held religious beliefs compel them to adhere to the truth that the testing, development, production, or

other connection to aborted fetal cell lines is morally and scripturally unacceptable and an affront to Scripture's teachings that God values all human life, and that abortion – in all of its manifestations and with all of its so-called 'benefits' – is a grave sin in which Plaintiff cannot participate.

76.     In addition to her sincerely held religious beliefs that compel her to abstain from any connection to the grave sin of abortion, Plaintiff has sincerely held religious beliefs that the Holy Spirit – through prayer and the revelation of Scripture – guide her in all decisions she makes in life.

77.     Plaintiff has sincerely held religious beliefs that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. See John 16:8,13 ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment . . . when he, the Spirit of truth, is come, he will guide you into all truth: for he shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come." (KJV)).

78.     Plaintiff also has sincerely held religious beliefs that she shall receive all answers to her questions through prayer and supplication, including for decisions governing her medical health. See James 1:5 ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him." (KJV)); *Mark* 11:24 ("Therefore I say unto you, What things soever ye desire, when ye pray, believe that ye receive them, and ye shall have them." (KJV)); *Philippians* 4:6-7 ("but in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus." (KJV)); *1 John* 4:14-15 ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him." (KJV)).

79.     Through much prayer and reflection, Plaintiff has sought wisdom, understanding, and guidance on the proper decision to make concerning these COVID-19 vaccines, and Plaintiff has been convicted by the Holy Spirit in their beliefs that accepting any of the three currently available vaccines are against the teachings of Scripture and would be a sin.

80.     Plaintiff has sincerely held religious beliefs that compel them to follow the teachings of the Holy Spirit, who has not given them peace or comfort to accept any of the three currently available COVID-19 vaccines.

81.     Plaintiff has sincerely held religious beliefs that she is being guided and instructed by the Holy Spirit not to accept any of the three currently available COVID-19 vaccines and that it would be a sin against God to do so.

82.     Plaintiff has shared these religious beliefs, and others, with Beckman, and have asked Beckman for exemption and reasonable accommodation for these beliefs, but Beckman has unlawfully and callously refused.

### D.     IRREPARABLE INJURY TO PLAINTIFF FROM THE MANDATORY COVID-19 VACCINATION POLICY.

83.     Plaintiff was discriminatorily targeted, singled out, and punished for the exercise of their sincerely held religious beliefs.

84.     Some of the harms which Plaintiff has suffered, since August 2021, include lack of respect in the workplace from human resources, direct reports, and upper management, been denied work opportunities (negative reference,) low bonus rate in 2022 and low salary increase in 2022, financial ruin, and harms to her physical, mental and emotional health (emotional distress).

### F.     WRONGFUL TERMINATION.

85.     Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 (Title VII) and the antiretaliation provision—prohibits an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. § 2000e–3(a).

86.     Through this action, Plaintiff seeks to represent herself who requested religious exemptions and accommodations from the Mandatory COVID-19 Vaccination Policy and who has had her request unlawfully denied (expressly or constructively).


87.     Plaintiff was slowly removed from duties of her role as a senior manager by her direct Manager, Robert Magari. Plaintiff's manager started contacting the Plaintiff's direct reports and assigned them with projects or tasks without first consulting with the Plaintiff. This behavior was perceived by other senior management including the Vice President of the Department. These managers would contact direct reports assigned to the Plaintiff and assigned them with tasks bypassing the Plaintiff's job title and responsibilities as their manager.

When Plaintiff held meetings with her team, they would tell her they were too busy or unable to complete tasks or projects the Plaintiff assigned them. When Plaintiff asked, "why were you unable to complete the tasks I assigned to you?", they responded "the director, referring to Robert Magari, requests take priority. *We cannot say no to him*". (Emphasis added)

88.     When Plaintiff found out about these assignments from her direct reports, she contacted Human Resources (HR) representative about what it has taken place with her manager behavior, Robert Magari, Plaintiff was ignored. HR did not intervene or resolve the retaliatory actions from her manager (i.e., ignoring her title and position within the company, making decisions impacting her team without prior consultation, removing her from 2021-2022 job duties without an advance discussion or conversation that the Plaintiff is no longer responsible for those tasks or projects, etc.). (See Exhibit 9)

89.     Plaintiff's manager, Robert Magari, refused to collaborate and communicate with the Plaintiff. On one occasion, during a 1:1 meeting scheduled every other week, the Plaintiff asked the manager "…I am not invited to management meetings, or you do not inform me of upcoming projects…I have to find out about projects from my direct reports…", and manager responded "…you will be informed if you are needed…". (Exhibit 10)

90.     Plaintiff's manager, Robert Magari, after the Plaintiff submitted the request for religious exemption in August 2021, engaged in "unfairly treatment" with the Plaintiff. Plaintiff was called names during a bi-weekly meeting held by Plaintiff's manager "…you are a conspiracy theorist…, responded the Plaintiff's manager when the Plaintiff started discussion and asking questions about the vaccines…" and in front of ten (10) other employees, which was reported to Human Resources (In support of the Plaintiff's manager).

91.     Plaintiff's manager, Robert Magari, engaged in "*unfairly treatment*" and played "*favorites*" (emphasis added) while ignoring and not communicating with the Plaintiff during the entire 2022 year. Plaintiff's manager promoted, approved salary increase (s) and bonus to Plaintiff's direct report (selected by Plaintiff's manager to take over the manager of data management position) over the Plaintiff. Even though the Plaintiff's performance prior to January 2022 (EEOC charge of discrimination notification) was not of a concern (no written warnings ever issued), Plaintiff's manager never acknowledged Plaintiff's contributions to the department. (Exhibit 11)

92.     Plaintiff termination by the Plaintiff manager's manager (Robin Newman, VP of Clinical Affairs) on June 2022 even after several attempts to have HR and Robin Newman to mediate and take action for Plaintiff manager's behavior (Plaintiff's opinion and suggestions were ignored, ridiculed, laughed out on several occasions). (Exhibit 12)

93.     Plaintiff was setup to fail purposely since Zoe Alba, HR; Robert Magari, Plaintiff's Manager, and even direct reports did no longer want to collaborate and work with the Plaintiff due to the

current EEOC charge against Beckman. Plaintiff believes HR and Plaintiff's manager work with their legal team to work out a plan to remove the Plaintiff from her current position by June 2022 (4 months action planned after the EEOC charge of discrimination) without being seen as 'adverse retaliatory actions' after Beckman was informed of the pending EEOC charge of discrimination against the company.

94.     There are questions of law and fact common. Those common questions include, but are not limited to, the following:

a.  Did Beckman comply with federal and state law when it indiscriminately denied religious exemption and accommodation request?

b.  Did Beckman comply with its obligations under federal law to engage in the interactive process when responding to the exemption request?

c.  Did Beckman violate federal and state law when it failed to provide a decision to its employees appeal within the timeframe to which Beckman committed; when it pressured its employees to accept vaccination against their religious beliefs by sending regular emails requesting status; even as their appeals were supposedly still pending?

## COUNT I – VIOLATION OF THE FLORIDA PUBLIC HEALTH ACT

95.     Plaintiff hereby reallege and adopt each and every allegation in paragraphs 1-94 as if fully set forth herein.

96.     The Florida Public Health Title XXIX protects Plaintiff's rights to engage in the exercise of their sincerely held religious beliefs without fear of discrimination from any entity, whether public or private, including Beckman.

97.     In fact, the State of Florida has declared it to be the public policy of the State to

protect the religious conscience rights of all individuals in the State of Florida as it relates to health care services.

98.     Plaintiff's sincerely held religious beliefs, which were articulated to Beckman under the signed written requests required by the Mandatory COVID-19 Vaccination Policy, constitute Plaintiffs' "conscience" under the Act because they are "a sincerely held set of moral convictions arising from belief in or relation to God.".

99.     The COVID-19 vaccines constitute "Health care" under the Act because they are a "phase of patient care," "medication," and/or "other care or treatment rendered by a physician or physicians, nurses, care professionals or health care facility, intended for the physical, emotional, and mental well-being of persons".

100.     By imposing its Mandatory COVID-19 Vaccination Policy upon Plaintiff and refusing to grant her religious exemptions and reasonable accommodations from the Mandatory COVID-19 Vaccination Policy, Beckman has impermissibly, unlawfully, and unconscionably discriminated against Plaintiff because of her conscientious refusal to receive or accept one of the three currently available COVID-19 vaccines in contradiction to their rights of conscience and sincerely held religious beliefs.

101.     By threatening Plaintiffs with adverse employment action for failure to comply with the Mandatory COVID-19 Vaccination Policy, Beckman has impermissibly discriminated against the Plaintiff on account of their sincerely held religious objections to receiving or accepting one of the three COVID-19 vaccines in violation of Federal and State of Florida laws.

102.     Beckman's Mandatory COVID-19 Vaccination Policy, on its face and as applied, is a gross violation of Plaintiffs' sincerely held beliefs, and her rights of conscience under the Florida Public Health Act.

103.     Beckman's Mandatory COVID-19 Vaccination Policy, on its face and as applied,

is an impermissible discrimination against Plaintiffs on the basis of their sincerely held religious beliefs, and in violation of Plaintiffs' rights of conscience under Florida Public Health Act

104. Beckman's Mandatory COVID-19 Vaccination Policy has caused Plaintiff immediate and irreparable harm by denying her the statutory right to accept or refuse administration of a COVID-19 vaccine that violated her conscience and religious beliefs, in direct violation of the Florida Public Health Act.

WHEREFORE, Plaintiff respectfully pray for relief against Beckman as set forth in her Prayer for Relief.

### COUNT II – VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*

105. Plaintiff hereby reallege and adopt each and every allegation in paragraphs 1-94 as if fully set forth herein.

106. Title VII of the Civil Rights Act of 1964 prohibits Beckman from discriminating against its employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. §2000e-2(a).

107. Plaintiff holds sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

108. Plaintiff informed Beckman of those beliefs and requested religious exemptions and reasonable accommodations from the vaccine mandate.

109. Beckman failed to engage in the interactive process with Plaintiff regarding her religious accommodation requests.

110. Irrespective of the interactive process, Beckman failed to provide Plaintiff with religious exemptions and reasonable accommodations, thereby discriminating against Plaintiff because of her religious beliefs.

111. Beckman's failure to provide religious exemptions and accommodations has harmed the Plaintiff that included retaliation actions by termination of employment.

112.     By failing to engage in the interactive process or offer any reasonable accommodation, Beckman's discriminatory actions were intentional and/or reckless and in violation of Title VII.

113.     Plaintiffs filed charges with the EEOC complaining of these discriminatory actions, accompanied by retaliation allegations and right to sue. (See Exhibit 7 )

WHEREFORE, Plaintiff respectfully pray for relief against Beckman as set forth in their Prayer for Relief.

### COUNT III – VIOLATION OF EMERGENCY USE AUTHORIZATION PROVISIONS OF THE UNITED STATES CODE, 21 U.S.C. §360bbb-3, *et seq.*

114.     Plaintiff hereby reallege and adopt each and every allegation in paragraphs 1-94 as if fully set forth herein.

115.     The United States Code provides that:

> **Subject to the provisions of this section**, the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use."
> 21 U.S.C. §360bbb-3(a)(1) (emphasis added).

116.     For ease of reference, Plaintiff will refer to the general provisions of 21 U.S.C. §360bbb-3 as the "Emergency Use Authorization Statute" or "EUA Statute."

117.     Part of the explicit statutory conditions for an Emergency Use Authorization under the Emergency Use Authorization statute, **the statute mandates that all individuals to whom the product approved for Emergency Use may be administered be given the option to accept or refuse administration of the product**.

118.     Specifically, 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III), states:

With respect to the emergency use of an unapproved product, the Secretary, to the

extent practicable given the applicable circumstances described in subsection (b)(1), shall for a person who carries out an activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following

. . .

Appropriate conditions designed to ensure that individuals to whom the product is administered are informed—

(I) that the Secretary has authorized the emergency us of the product;

(II) of the significant known potential benefits and risks of such use, and of the extent to which such benefits are unknown; and

(III) **of the option to accept or refuse administration of the product,** of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. §360bbb-3(e)(1)(A)(ii)(I)-(III) (emphasis added).

119.    Put simply, the Emergency Use Authorization statute provides that, **as a condition of receiving authorization for Emergency Use, <u>all individuals to whom the product may be administered are given the right to accept or refuse administration of the product</u>.**

120.    The only currently available COVID-19 vaccines (Janssen/Johnson & Johnson, Moderna, and Pfizer/BioNTech) are only authorized for use under the Emergency Use Authorization statute and have no general approval under the United States Code.

121.    Because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute mandates that all individuals to whom the product may be administered, including Plaintiffs, be given the right to accept or refuse administration of the product.

122.    The recent FDA biologics license application (BLA) approval of the product COMIRNATY, COVID-19 Vaccine, mRNA, manufactured by BioNTech Manufacturing GmbH,[8] **does not change the EUA status** of the Pfizer-BioNTech COVID-19 Vaccine that has been

---

[8] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA (Aug. 23, 2021), https://www.fda.gov/media/151710/download.

available under EUA since December 23, 2020.[9] According to the EUA extension letter issued by the FDA to Pfizer on August 23, 2021, the Pfizer-BioNTech COVID-19 Vaccine and BioNTech's COMIRNATY, COVID-19 Vaccine, mRNA **"are legally distinct"** products.[10]

123.    Moreover, the now "approved" COMIRNATY vaccine cannot be distributed for use until BioNTech submits "final container samples of the product in final containers together with protocols showing results of all applicable tests" and BioNTech receives "a notification of release from the Director, Center for Biologics Evaluation and Research (CBER)."[7] Thus, it is not clear when (or if) any Beckman employee will have access to the "approved" COMIRNATY vaccine, leaving all Beckman employees who may elect to receive the "Pfizer" vaccine pursuant to Beckman's mandatory vaccine policy to receive a dose of the current stock of Pfizer-BioNTech vaccine still being administered subject to EUA rules.

124.    On August 23, 2021, the United States Food and Drug Administration issued two separate letters pertaining to two separate COVID-19 vaccines. **Exhibit 13**, BioNTech Letter, United States Food and Drug Administration to BioNTech Manufacturing GmbH (Aug. 23, 2021), Pfizer Letter, United States Food and Drug Administration to Pfizer, Inc. (Aug. 23, 2021).

125.    In the Pfizer Letter, the FDA confirms that, on December 11, 2020, it granted Emergency Use Authorization for the previous Pfizer-BioNTech COVID-19 Vaccine. (Ex. 13, Pfizer Letter at 1.) It also notes that the EUA approval was continued on December 23, 2020, February 25, 2020, May 10, 2021, June 25, 2021, and August 12, 2021. (Pfizer Letter at 1-2.)

126.    The Pfizer Letter also makes clear that **there is a scientific, manufacturing, and legally significant difference between the Pfizer-BioNTech COVID-19 Vaccine and the newly approved Comirnaty Vaccine**. (Pfizer Letter at 2 n.9.)

127.    Specifically, the FDA stated that although the COMIRNATY COVID-19 Vaccine

---

[9] EUA Extension Letter for Pfizer-BioNTech COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/media/150386/download.
[10] *Id.* at 3 n.10 (emphasis added).

was granted full approval by the FDA, the Pfizer-BioNTech COVID-19 Vaccine was still only subject to the EUA authorization. (Pfizer Letter at 2 n.9 ("In the August 23, 2021 revision, FDA clarified that, subsequent to the FDA approval of COMIRNATY (COVID19 Vaccine, mRNA) for the prevention of COVID-19 for individuals 16 years of age and older, **this EUA would remain** BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA, *supra* note 4 at 2.

**in place for the Pfizer-BioNTech COVID-19 vaccine for the previously-authorized indication and uses**. It also authorized COMIRNATY (COVID-19 Vaccine, mRNA) under this EUA for certain uses that are not included in the approved biologics license application (BLA)." (Emphasis added).

128.    Put simply, because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute prohibits Beckman (or any other entity) from making the COVID-19 vaccines mandatory.

129.    All existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine remain under the sole authorization of the EUA. (Pfizer Letter at 2 n.9.)

130.    On information and belief, the existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech COVID-19 Vaccine, **not the fully approved COMIRNATY**.

131.    There are no currently existing doses of COMIRNATY in the United States and it **is not being manufactured for production or distribution in the United States at this time**.

132.    In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, <u>**there is no sufficient approved vaccine for distribution to the population**</u>." (Pfizer Letter at 6 n.12 (emphasis added).)

133.    Thus, the FDA has admitted and acknowledged that the current supply of the fully approved COMIRNATY is not even available for the population in the United States, and thus issued the continued EUA authorization for the Pfizer-BioNTech Covid-19 Vaccine. (*Id.*).

134.    Indeed, in order for the FDA to have even continued the EUA for the Pfizer-BioNTech Covid-19 Vaccine, **it was required to find that there were no alternatives available for the Pfizer-BioNTech vaccine**. (*See* Pfizer Letter at 6 ("There is no adequate, approved, and **available alternative** to the Pfizer-BioNTech COVID-19 Vaccine to prevent COVID-19." (Emphasis added).)

135.    Thus, the only currently available COVID-19 vaccines are subject solely to EUA approval and therefore cannot be mandated by Beckman.

136.    In addition, consistent with the requirement in the Emergency Use Authorization statute that all potential recipients of the COVID-19 vaccine be informed of the option to accept or refuse the vaccine, the Emergency Use Authorization Fact Sheet for all three of the currently available COVID-19 vaccines specifically states – **as required by the Emergency Use Authorization statute** – that individuals have the right to refuse administration of the COVID-19 vaccine. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Moderna COVID-19 Vaccine is attached hereto as **Exhibit 14** and incorporated herein. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Pfizer-BIONTECH COVID-19 Vaccine is attached hereto as **Exhibit 15**. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Janssen COVID-19 Vaccine is attached hereto as **Exhibit 16** and incorporated herein.

137.    Specifically, the Emergency Use Authorization Fact Sheets for all three COVID-19 vaccines state that it is the individual's right to refuse administration of the vaccine.

138.    By imposing its Mandatory COVID-19 Vaccination Policy on Plaintiff and refusing to grant Plaintiff her requested religious exemption from such mandatory vaccination, Beckman denied Plaintiff the right to accept or refuse administration of the three currently

available COVID-19 vaccines, which are subject only to Emergency Use approval under the Emergency Use Authorization statute.

139.    Beckman, by denying Plaintiff the right to accept or refuse administration of the three currently available COVID-19 vaccines, is violating the provisions of the Emergency Use Authorization statute.

140.    Beckman, by denying Plaintiffs their requested religious exemption and reasonable accommodation, is denying Plaintiffs' their statutory rights under the United States Code and infringing upon the explicit protections outlined in the Emergency Use Authorization statute.

141.    Beckman's Mandatory COVID-19 Vaccination Policy has caused Plaintiff immediate and irreparable harm by denying her the statutory right to accept or refuse administration of the three COVID-19 vaccines, which are subject only to Emergency Use under the Emergency Use Authorization statute.

142.    Plaintiff had no adequate remedy at law to prevent the ongoing deprivation of her statutory rights under the Emergency Use Authorization statute to be given the right to accept or refuse administration of the COVID-19 vaccines, which are subject only to Emergency Use authorization under the Emergency Use Authorization statute and has caused Plaintiff to suffer adverse employment action from Beckman.

WHEREFORE, Plaintiff respectfully pray for relief against Beckman as hereinafter set forth in their Prayer for Relief.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A. That this Court render a Declaratory Judgment declaring that Beckman's

Mandatory COVID-19 Vaccination Policy, both on its face and as applied by Beckman, is illegal and unlawful under the Emergency Use Authorization statute, 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III), the Florida Public Health Title XXIX 381.00317 and 381.00318 and Title VII, 42 U.S.C. § 2000e, *et seq.* and further declaring that:

      a.  by terminating Plaintiff from employment with Beckman or by threatening to terminate or remove Plaintiff from her current position, Beckman has unlawfully denied Plaintiff the statutory rights under the Emergency Use Authorization statute to refuse administration of a product granted only Emergency Use Authorization; and

      b.  by terminating Plaintiff from employment with Beckman or by threatening to terminate or remove Plaintiff from her current position, Beckman has unlawfully discriminated against Plaintiff on account of her sincerely held religious objections to receiving or accepting one of the three COVID-19 vaccines in violation of Florida Public Health Title XXIX 381.00317 and 381.00318 and Title VII.

    B.    That this Court award Plaintiff actual damages in an amount to be proven at trial (but not less than $50,000 per violation, as provided by 381.00318 4a/2), and treble damages as provided by Fla. Stat. § 768.72(3), including those for pain and suffering, that Plaintiff sustained as a result of Beckman's discriminatory, unconscionable, and unlawful Mandatory COVID-19 Vaccination Policy.

    C.    That this Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

    D.    That this Court retain jurisdiction over the matter for the purposes of enforcing the Court's order.

Case:   Document #: 1 Filed: 09/19/22 Page 34 of 35   PageID #: 34

E.      That this Court award Plaintiff the reasonable costs and expenses of this action, including reasonable legal fees, as required by Fla. Stat. § 381.00318 4a/2 and Title VII.

F.      That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Dated:                              Respectfully submitted,

                                     /s/

                                   Anayansi Van Der Berg

## **VERIFICATION**

I, Anayansi Van Der Berg, am over the age of eighteen years and was an employee of Beckman Coulter from February 2020 to June 2022. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Florida, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 19, 2022

/s/ _____
Anayansi Van Der Berg